Mr. Justice Bradley
delivered the opinion of the Court:
This cause is here upon the complainant’s appeal from the decree of the special term dismissing his bill.
The cause was heard upon the bill, the answers of the defendants, and stipulation of the parties as to some agreed facts. It appears, by the record, that on the 5th day of November, 1846, the complainant insured his life in the defendant company for the sum of $2,000; that he regularly paid the annual premiums thereon up to and including the 5th day of November, 1886, and that on the 5th day of November, 1887, he offered to surrender the policy, which he claimed had at that time a surrender value, and asked that that value be paid to him. Thereupon certain negotiations were had between the complainant and the defendant company, which were not productive of the desired result to the complainant, and he filed this bill on the 13th day of June, 1889, by which he prays that the defendant company may be decreed to pay to him the amount of his policy. It is conceded that the complainant fully complied with all the provisions of the contract of insurance, but it is insisted that his policy has no surrender value because its date was long *229 anterior to the provisions of the statute law of the State of Massachusetts, where this defendant company was incorporated, which provided for a cash surrender value upon policies after the payment of two annual premiums, application being made therefor upon any anniversary of a premium payment.
It is also insisted that if the policy had a surrender value under the law, the complainant is not entitled to demand its payment because it is alleged that he is unable to give a legal discharge to the company.
It appears by the record that at the time of filing his bill the complainant was 80 years old, and that for forty years he had paid to the defendant company, in addition to other sums required by the policy to be. deposited, the annual premium of $51.20, and that, therefore, without taking into consideration any question of interest upon the amounts paid, the company has received upon the policy sums which, in the aggregate, considerably exceed the amount of the insurance. By the policy, the company contracts to pay to the complainant, his executors, administrators and assigns, the sum insured, “for the benefit of his wife, if she shall survive him, otherwise for the benefit of his then surviving children, and the then surviving descendants of any then deceased child or children, instead of such deceased child or children respectively, subject, however, to any provisions or conditions made by the will of ” the complainant. The complainant was married at the time of taking out this policy. His wife died in the year 1888. It is admitted that two children only survive, and that they are the defendants, Park Webster and Clayton Webster, aged respectively forty-seven and forty-four years, at .the date of the filing of the bill. Both of these defendants have answered the bill, admitting its allegations, conceding the right of the complainant to 'demand and receive the surrender value of the policy, and releasing the defendant company from all liability to them, provided the amount of the policy or its surrender value is paid the complainant. *230 It is contended, under the peculiar terms of the policy, with reference to the beneficiaries, that until the decease of the assured, it is and will be impossible to ascertain the persons entitled to its proceeds.
The act of the legislature of Massachusetts of April 23, 1880, gives a surrender value to a policy after the payment of two annual premiums, upon the termination of the insurable interest in the life of the insured, and provides that the insurable interest shall be construed to have terminated when the insured has no minor or dependent child, and his wife, if he has one, and any living beneficiary or beneficiaries named in the policy, shall join in the application for surrender thereof.
A circular issued by the defendant company May 21, 1883, and distributed by it to its patrons, announced that “ a policy made for the benefit of the insured can be legally surrendered by himself or by his administrator or executor. When made for the benefit of a married woman, it can be surrendered upon her receipt and that of her husband. If made for the benefit of children, it must be shown to the satisfaction of the company that the insured had no minor or dependent child.”
Although it is admitted that the .complainant and his two sons could give a 'complete discharge and acquittance to the company if children only were named as beneficiaries, it is denied that under the peculiar description of the beneficiaries given in the policy, and in view of the possible contingency of the death of a child prior to that of the assured leaving children, and of the possibility of the remarrying of the insured and of his leaving of a widow or other child, the sons have not such a present interest as would enable them to give such a discharge as would completely protect the company. The contingency first named might happen. It is possible. But the last named contingency by reason of the advanced age of complainant, is one that might be well deemed beyond the range of the probable, if not within the realm of the impossible.
*231 The argument has been pressed with much force in behalf of the complainant, that in view of the fact that the insurance is made payable to him, his executors, administrators and assigns, for the benefit of his wife if she shall survive him, otherwise for the benefit of his then surviving children, &c., subject, however, to 'any provisions or conditions made by his will, the beneficial interest as conferred is in the nature of a testamentary disposition, that it is ambulatory and revocable at any time by the insured, and that no beneficial right or interest has vested under the policy in any of the beneficiaries named.
It is also urged in that connection that in the event of the death of the insured, the proceeds of the policy would, in the hands of the executor or administrator, be subject to the debts of the decedent, and that creditors would have a superior right to the beneficiary.
There would appear to be no sound reason against the absolute control of the insured over a policy upon which he is paying the premiums, and in which some third person, not a creditor, is named as beneficiary, save the existence of a vested right in such person. The insured may decline to pay the premiums and may permit the policy to lapse, and hence it has been argued, and it has been held by some courts, that the insured, under such circumstances, may surrender his policy absolutely or substitute a new one with different beneficiary. On the other hand, it has been held, and the weight of authority is that way, that inasmuch as the beneficiary may elect to pay the premiums and continue the policy, his right is vested, and the policy cannot be surrendered by the insured without his consent, so as to deprive him of his right, or relieve the company of responsibility to him. If it is upon that principle that the insured, under such circumstances, cannot validly surrender or change the direction of his policy, without the concurrence of the beneficiary, it would seem to be equally logical and true that when the beneficial interest is directed to a person or a class having no actual existence, and as to whom, as in *232 this case, there is no certainty .of future existence, the beneficiary is a mere supposition; and inasmuch as there is no sone whose interests can be consulted, or whose rights can be prejudiced, the insured must be absolute in his control of his policy.
Be that as it may, and deeming it unnecessary to determine whether the beneficial interest is vested or not, we are of opinion, if the quoted provisions of the law and of the company’s circular apply to this policy, and it has a surrender value, inasmuch as there is no wife and there are no dependent children, and the only beneficiaries in being unite with the complainant in making a demand for the surrender value to be paid to the complainant, that the complainant and his sons, defendants in this cause, can by their agreement and acquittance, fully exonerate and protect the company.
The remaining question is claimed by the defendant company to be conclusively settled by the legislation of the State of Massachusetts against the asserted right of the complainant. By an act of that legislature of April 10, 1861, it was enacted that no policy of insurance on life thereafter issued by any company chartered under the authority of that Commonwealth should become forfeited by the nonpayment of premium thereon.
By a resolution of the defendant company adopted August 27, 1867, all the privileges and benefits of that act were extended and made applicable to all policies of that company, then in force. It is conceded that under this resolution the policy in question in this cause became non-forfeitable. By a subsequent act of April 23, 1880, it is provided generally that no life policy issued by any company incorporated or organized under the laws of that Commonwealth should become forfeited or void for non-payment of premium after the payment of two full annual premiums. By another section of the same act, it is provided that when the insurable interest in the life of the insured has terminated, after the payment of two annual premiums, the net value of the *233 policy shall be a surrender value payable in cash, which the holder of the policy could claim or recover in cash upon any anniversary of a premium payment; and by a succeeding section, that the insurable interest shall be construed to have terminated when the insured had no minor or dependent child, and his wife, if he has one, and any living beneficiary or beneficiaries named in the policy, shall join in the application for surrender.
The two acts of 1861 and 1880 were consolidated and reenacted November 19, 1881, and the surrender value feature was made to apply only to policies issued after December 31, 1880. An act of April 21, 1887, amending and .codifying the statutes relating to insurance, probably for the purpose of determining the question, whether the act of April 23, 1880, which was unlimited and general in it's terms, should have a retroactive effect, provides that all policies theretofore issued shall be subject to the provisions of law applicable and in force at the date of such issue. It is averred in the bill and admitted by the answer that the complainant offered to surrender his policy on November 5, 1887, the premium anniversary.
At that date, undler the legislation of the State of Massachusetts, all doubt that might have surrounded the question, whether the act of April 23, 1880, was by the legislature intended to be, or could lawfully be, construed to be retroactive, had been definitely settled by the act of April 21 of the same year.
Without, therefore, the aid of some force outside of thé contract stipulations of the policy itself, and independent of the statute law, this policy, -although made n.on-forfeitable by resolution of the defendant company, had at the time of its attempted surrender no surrender value. The complainant contends that this force is found in his acceptance of a proposition made in the circular of the defendant company, issued May 21, 1883, in which it was announced that every policy upon which two or more annual premiums had been paid has a cash surrender value, which can be *234 obtained .upon demand upon the company in the manner and at the times indicated in the circular.
In behalf of the company it js claimed that this circular was not intended to amend or modify existing contracts of insurance, but that it applies only to future insurance, and that its object and purpose were 'simply to present the advantages under the Massachusetts law to policyholders for the purpose of inducing new insurance. The circular, so far as it is necessary to quote it for the purposes of this point, is as follows: *
“Features of the Massachusetts Non-Forfeiture Law.
“ Frgst. Every policy upon which two or more annual premiums have been paid has a cash value payable when application is made therefor upon the anniversary of any subsequent premium, provided a legal discharge can be given.”
It would appear to be beyond question that it was within the power of the company to offer additional benefits and privileges to its patrons above those conferred by existing contracts of insurance, not only as an inducement to new insurance, but as an incentive for the continuance of old insurance, and that when such offer forms the consideration in part for the payment of premiums upon an old policy, and of its continuance in force by the insured, the company would be bound by its contract.
The circular purports to be a statement of the condition of the Massachusetts law relating to non-forfeiture and surrender value. It was issued after the act of 1880 had been modified by that of November 19, 1881, and under the provision of the latter act, the surrender value feature was 'not applicable to the policy in suit. It does not, in terms, apply the feature of surrender value to future insurance, nor is it, in terms, prospective. It deals with the present. It relates to every policy upon which two or more annual premiums have been paid, and it expressly declares that such a policy has a cash value.
If the company had intended its circular solely as an in *235 ducement for future insurance, it would have been a very easy matter, and the most natural form of expression to use, to have extended the privilege to policies upon which two premiums shall be paid and to have provided that they shall have a cash value.
The most reasonable and the only proper construction of the language used, makes it applicable to policies- then existing, as well as to such as might be taken out in the future. The complainant so construed it. He accepted the privilege extended to him as a policy holder at the date of the circular, and he was induced to act upon it by ceasing the payment of premiums, and by offering to surrender the policy on an anniversary and by demanding the payment of the cash surrender value.
Since November 5, 1886, he has paid no premium, and he has been led by the declared right contained within the circular, .and by its invitation to put himself in a position of default in the payment of premium, with whatever of loss or inconvenience may be entailed thereby, unless his offer to surrender is accepted, and his claim to the payment of cash value of his policy is satisfied.
In other words, he has been led to change his position to his detriment, upon the faith of the company’s circular; and we are of opinion that under the plain doctrine of estoppel, the defendant company cannot be permitted to deny that the policy in suit has a surrender cash value.
The complainant is entitled to recover from the defendant company the cash value of his policy.
The decree of the special term is reversed, and a decree, requiring the defendant to pay to the complainant the cash value of his policy as of the date of November 5, 1887, upon his executing and delivering to the company his bond of indemnity, as tendered by him in his bill, will be entered, the defendant to pay the costs of the cause.
If the parties can agree upon the amount, there will be no necessity for an audit, and its expense may be saved; otherwise the cause "will be referred to the Auditor to ascertain and report the amount.